IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-CR-00038 AGF/NAB |
| | ) | |
| ROBERT ISTILL MCNAIR, | ) | |
| Defendant. | ) | |

## POST-HEARING BRIEF IN SUPPORT OF MOTION
## TO SUPPRESS PHYSICAL EVIDENCE

### I.    Background

After an evidentiary hearing in this cause, Defendant, by and through counsel, respectfully requests this Court to suppress as evidence in this case a Sig Sauer .357 pistol (Serial Number AF15159), 11 .357 caliber live rounds of ammunition, an empty PT111 Pro Cal 9mm caliber pistol magazine, a Pro Mag extended pistol magazine, and 28 9mm caliber live rounds of ammunition seized on or about November 12, 2020.

At the suppression hearing the Government called one witness, U.S. Probation Officer Rebecca Cory, who testified that she was informed by Defendant that he had been in a motor vehicle accident in Illinois on August 18, 2020. She testified that she received a phone call from an Illinois State Trooper the next day and that he told her Defendant was present at the scene of a motorcycle crash the night prior around 11:00 p.m. Officer Cory said the trooper told her he asked Defendant for his insurance card, and Defendant began searching an area near the debris from the crash, but was unable to find it and was eventually allowed to leave. Officer Cory testified that the trooper said he later found a black Taurus 9mm semiautomatic handgun near the crash site. She testified that she was not present at the scene of the motorcycle accident on August 18, 2020, and that she

didn't know the specifics of where the firearm was found.

Officer Cory testified that on August 26, 2020, a search warrant was authorized by the Court to conduct a search of Defendant's residence. She said due to the COVID-19 pandemic the search was postponed several times. Officer Cory stated she did not know if the Government conducted any searches at all or picked certain cases to conduct them in during the time frame from late August to early November 2020. Officer Cory said on October 8, 2020, the Court modified Defendant's conditions of supervised release to include 90 days of location monitoring. She testified that Defendant was allowed to move to a new residence in October 2020 and that a "virtual walkthrough" of the new residence was conducted that revealed no contraband in plain view.

Officer Cory testified that on November 12, 2020, Defendant reported to her office where he was informed his residence would be searched. She testified that she did not participate in the search of the residence, nor was she present in the residence when it was searched, but that she stayed outside in a vehicle with Defendant. Officer Cory said the officers found a firearm, magazines, and ammunition in Defendant's residence.

## II.     Discussion

Officer Cory testified at the suppression hearing that the search was conducted by a warrant; however, in its response to Defendant's motion to suppress the Government stated, "Therefore, the dispositive question before the Court is whether the events known to Officer Cory prior to the initiation of the search established reasonable suspicion." Thus, the Government claims the search was based upon Defendant's special condition of mandatory supervised release even though its own witness claims it was based on a

warrant.

*A Search Warrant Not Executed for 79 Days Shows a Reckless Disregard for Proper Procedures*

Rule 41(e)(2)(A)(i) states that search warrants should be executed within 14 days of issuance. However, failure to abide by Rule 41 "does not automatically require exclusion of evidence in a federal prosecution." *U.S. v. Schoenheit*, 856 F.2d 74, 76 (8th Cir.1988) (*citing U.S. v. Brown*, 584 F.2d 252, 258 (8th Cir.1978)). "Instead, exclusion is required only if a defendant is prejudiced or if reckless disregard of proper procedure is evident." *U.S. v. Spencer*, 439 F.3d 905, 913 (8th Cir. 2006).

In this case, the Government waited 79 days to execute the search warrant. The Government's witness testified that the reason for the delay was due to the COVID-19 pandemic. However, there must have been searches that were conducted during the pandemic so it would seem the Government was picking and choosing certain cases to conduct searches in during that time frame. Defendant's constitutional rights are not diminished during a pandemic and the Government has not argued such. The 79-day delay from August 26, 2020, to November 12, 2020, shows a reckless disregard of proper procedure in this case. The Fourth Amendment prohibits unreasonable searches and a search conducted 79 days after a warrant was issued is quite unreasonable.

*Any Reasonable Suspicion the Government Had at on August 18, 2020, Became Stale by the Time a Search was Conducted*

"'An officer having reasonable suspicion that a probationer, who is subject to a search condition, is criminally active is sufficient to establish 'enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable.'" *United States v. Makeeff*, 820 F.3d 995,

1001 (8th Cir. 2016) (*quoting United States v. Knights*, 534 U.S. 112, 121 (2001)). In *Makeeff*, the Defendant was on mandatory supervised release for possession of child pornography when his probation officer came to his residence and saw a USB drive in plain view and a search was conducted on the USB drive.

In this case, Defendant was involved in a motorcycle crash in Illinois on August 18, 2020. He was released from the scene by an Illinois State Trooper who subsequently found a firearm on the side of the highway in Washington Park, Illinois somewhere near the site of the crash. The trooper did not testify at the suppression hearing and Officer Cory could not tell us exactly where the firearm was found because she was not there when it was found. It was found somewhere on the side of the highway when Defendant was not present. The government did not present evidence at the hearing that amounted to reasonable suspicion that the firearm on the side of the highway was Defendant's firearm.

Even if the Government had reasonable suspicion that Defendant's residence contained contraband or evidence of a violation of a condition of release on August 18, 2020, it became stale by the time of the search on November 12, 2020. There was nearly a 3-month delay in the search, Defendant moved residences after August 18, 2020, and there was a virtual walk-through done at that new residence in October 2020 where no contraband was found in plain view.

"A warrant becomes stale if the information supporting the warrant is not 'sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search.'" *U.S. v. Brewer*, 588 F.3d 1165, 1173 (8th Cir. 2009) (*quoting U.S. v. Palega*, 556 F.3d 709, 715

(8th Cir.2009)). "There is no bright-line test for determining when information in a warrant is stale." *U.S. v. Lemon*, 590 F.3d 612, 614 (*quoting U.S. v. Pruneda*, 518 F.3d 597, 604 (8th Cir. 2008). "Instead, we look to 'the lapse of time since the warrant was issued, the nature of the criminal activity, and the kind of property subject to the search.'" *U.S. v. Huyck*, 849 F.3d 432, 439 (8th Cir. 2017) (*quoting U.S. v. Estey*, 595 F.3d 836, 840 (8th Cir. 2010).

While according to the Government this case did not involve a warrant, the warrant context can help explain the staleness issue of a search based upon reasonable suspicion. Three months had lapsed since the alleged reasonable suspicion arose in this case. There were no complicated issues involved in conducting a search of Defendant's residence prior to him moving to a new place. The Government simply failed to conduct the search for months and then, when it finally conducted a search, it searched a new residence.

The case law cited by the Government is inapposite to the facts in this case regarding the issue of staleness. In its response, the Government quoted *U.S. v. Jeanetta*, 533 F.3d 651 (8th Cir. 2008), for the proposition that the time delay between the motorcycle accident and the search did not render the search stale. The Government wrote, "'[W]here continuing criminal activity is suspected, the passage of time is less significant' in terms of assessing staleness in the search context." *Id*. at 655 (*quoting U.S. v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998)).

However, in *Jeanetta* there were numerous allegations over a period of time and the issue decided by the court was that a 2-week period between a controlled buy and the issuance of the warrant was not presumptively stale. In this case, the Government does

not claim the search was done via a warrant, but by a special condition of Defendant's mandatory supervised release. In this case, the Government waited over five times as long as it did in *Jeanetta* to search Defendant's residence based upon only one allegation.

The Government cited *U.S. v. Warford*, 439 F.3d 836 842 (8th Cir. 2006) in its response to the motion to suppress, stating that it held that years-old information about drug manufacturing could serve as the basis for a search warrant. However, the court in that case never ruled on the issue of staleness because the issue was whether officers could rely in good faith on a search warrant. In *Warford*, the allegations contained in the warrant occurred at the residence that was searched. In this case, the allegations occurred on the side of a highway in Illinois.

The Government also cited *United States v. Neal*, 528 F.3d 1069 (8th Cir. 2008). In that case, the affidavit in the search warrant contained personal observations of firearms in Defendant's residence on several occasions, the last of which was made one month prior to the search.

### III.     Conclusion

For the foregoing reasons, Defendant respectfully requests that the Court grant Defendant's Motion to Suppress Physical Evidence.

                Respectfully submitted,


                <u>/s/ Ryan Martin</u>
                Ryan Martin, # 61668MO
                Co-Counsel for Defendant
                Taaffe & Associates, LLC
                1015 Locust St.
                Suite 1032
                St. Louis, MO 63101
                ryan@taaffeandassociates.com
                (618) 365-0413


<u>Certificate of Service</u>

      The undersigned hereby certifies that a true and accurate copy of the foregoing was electronically filed on this 23rd day of August 2021.


                <u>/s/ Ryan Martin</u>
                Ryan Martin