UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 4:21-CR-00038-AGF-NAB |
| ROBERT ISTILL MCNAIR, | ) | |
| Defendant. | ) | |

**UNITED STATES' POST-HEARING BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE**

COMES NOW, the United States of America, by and through Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and William Scharf, Assistant United States Attorney for said District, and for its Post-Hearing Brief in Opposition to Defendant's Motion to Suppress Physical Evidence, Docket No. 37, states as follows:

I.  **INTRODUCTION**

In his Post-Hearing Brief in Support of his Motion to Suppress Physical Evidence, Docket No. 44, Defendant advances two principal arguments: First, he contends that the search of his residence by U.S. Probation officers fell afoul of the strictures of Federal Rule of Criminal Procedure 41, which governs the execution of warrant searches—specifically Rule 41's 14-day time limit on the execution of search warrants. As the search conducted was not a warrant search, though, and was instead conducted pursuant to a special search condition of Defendant's supervised release in a previous matter, Rule 41 is simply inapplicable.

Second, Defendant asserts that the search was improper because the reasonable suspicion predicating the search had gone stale by the time of the execution of the search, as the search was initially authorized 79 days prior to the actual search. However, the Eighth Circuit has long held

that "[i]nformation that someone is suspected of possessing firearms illegally is not stale, even several months later, because individuals who possess firearms tend to keep them for long periods of time." *United States v. Neal*, 528 F.3d 1069, 1074 (8th Cir. 2008). And furthermore, according to testimony at the evidentiary hearing held in this case, Defendant continued to violate conditions of his supervised release even after the decision was made to search his residence, but before the search was conducted, reinforcing the reasonable suspicion already present from the perspective of his Probation officer.

Defendant has advanced no valid argument that undermines the validity of the search of his residence and the resulting seizure of a firearm, firearm magazines, and ammunition, and therefore his Motion to Suppress should be denied.

## II. BACKGROUND

*A. Procedural Background*

This matter arises out of the Defendant's violations of the terms of his supervised release in a matter originating in the U.S. District Court for the Western District of Missouri. On May 8, 2019, Defendant, who had previously pled guilty to a single count of conspiracy to distribute 500 grams or more of Methamphetamine in violation of 21 U.S.C. § 841(a)(1), was sentenced to 36 months' imprisonment, to be followed by a five-year term of supervised release. *See United States v. McNair*, 2:17-CR-04036, Docket No. 201 (W.D. Mo. May 9, 2019). At that time, in addition to the standard conditions of supervision, the Court imposed a search condition: that "[t]he defendant shall submit his person and any property, house, residence . . . and effects to a search, conducted by a U.S. Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release." *Id.* at 5. After Defendant was released from the custody of the Bureau of Prisons, his supervised release was

transferred to this Court on January 16, 2020. *See United States v. McNair*, 4:20-CR-00044, Docket No. 1 (E.D. Mo. Jan 16, 2020).

On November 12, 2020, U.S. Probation officers conducted a search of Defendant's residence and found a loaded Sig Sauer .357 caliber semiautomatic pistol, a 9mm extended pistol magazine containing 28 rounds of ammunition, and another empty 9mm pistol magazine. Based on this search, Probation requested that the Court revoke Defendant's supervised release and issue a warrant for his arrest. *McNair*, 4:20-CR-00044, Docket No. 4 (E.D. Mo. Nov. 12, 2020). The Court granted this request, Defendant was held in custody, and after hearing arguments at a detention hearing the Court further ordered Defendant detained on November 20, 2020. *McNair*, 4:20-CR-00044, Docket No. 18 (E.D. Mo. Nov. 20, 2020).

On January 21, 2021, a federal grand jury returned an indictment charging Defendant with one count of having been a felon in possession of a firearm on or about November 12, 2020. Redacted Indictment, Docket No. 2. On May 26, 2021, Defendant filed a Motion to Suppress Physical Evidence. Docket No. 37. In it, Defendant argued for suppression of the firearm, magazines, and ammunition seized on the grounds that there was no reasonable suspicion justifying the search of his residence.[1] Motion to Suppress, Docket No. 37, at 3. The United States filed its Response in Opposition on June 9, 2021. Docket No. 38.

B. *Evidentiary Hearing*

The Court held an evidentiary hearing on July 23, 2021. Docket No. 42. At that hearing, the United States called as a witness U.S. Probation Officer Rebecca Cory. *See* Clerk's Witness List, Docket No. 43. Cory testified that she had been a U.S. Probation Officer for four years, and

---

[1] Defendant also argued that the items seized were not in plain view at the time of the search, but the United States has never argued that they were. *See* Motion to Suppress, Docket No. 37, at 3.

during that time that she had supervised approximately 500 individuals on supervised release. Evidentiary Hearing Transcript (hereinafter "Tr."), Docket No. 48, at 5:4–8. Officer Cory testified that, at the outset of her supervision of the Defendant, she had explained all of the conditions of his supervision to him. Tr. at 5:21–24. These included standard conditions prohibiting the Defendant from leaving the Eastern District of Missouri without first obtaining her permission, Tr. at 6:1–9, requiring the Defendant to be truthful with her, Tr. at 6:10–14, requiring the Defendant to report any contact with law enforcement within 72 hours, Tr. at 6:15–20, and barring him from using, possessing, or having access to any firearm or dangerous weapon, Tr. at 6:21–25. Officer Cory also reviewed the above-described special search condition with the Defendant, explaining to him that she could conduct a search of his residence on the basis of reasonable suspicion. Tr. at 7:5–8.

Officer Cory testified that on August 19, 2020, Defendant called her and told her that he was a witness to an accident and had had contact with law enforcement as a result. Tr. at 7–9. Shortly thereafter, Officer Cory received a call from an Illinois State Trooper, who reported that he had had contact with the Defendant in Washington Park, Illinois, which is in the Southern District of Illinois, and therefore not an area that Defendant was allowed to be in without prior authorization. Tr. at 9. Officer Cory testified that the State Trooper reported that Defendant had identified himself as the driver of a motorcycle that had crashed into a ditch, had provided his driver's license to the Trooper, and then had begun to search a ditch for his vehicle registration before leaving the scene. *Id.* The Trooper further told Officer Cory that he had then searched the same ditch where Defendant had gone to look for his registration, and there the Trooper found among scattered property from the crash a Taurus 9mm semiautomatic handgun. Tr. at 9–10.

Officer Cory testified that, based on her training and experience, in addition to being a violation of the conditions of supervision in and of itself, possessing a firearm or ammunition indicates to her that an offender under supervision is "likely going to be committing other crimes or involved in other criminal activities." Tr. at 10:21–25.  Therefore, "[b]ecause of the report of [the Defendant] possibly being in possession of the firearm and the state trooper's suspicion that he was in possession of it as well as [Defendant's] other violations pertaining to that event," Tr. at 10:15–18, Officer Cory and her supervisor made the decision to pursue a search of Defendant's residence, Tr. at 10, and such a search was authorized by the Court on August 26, 2020.  Tr. at 11:4–6.

Because of the ongoing Covid-19 pandemic, the search was not immediately conducted, as U.S. Probation assessed how to adjust procedures to ensure the safety of its employees "working in different environments."  Tr. at 11:10–14.  On October 8, 2020, with the search still not having taken place, Officer Cory applied for a modification of the terms of Defendant's supervision to include electronic location monitoring, in light of Defendant's having previously left the district without permission as well as her "suspicion that he was involved in criminal activity still."  Tr. at 11:16–17.  While on location monitoring, Defendant committed a number of further violations of the terms of his supervised release, such as being at unapproved locations.  Tr. at 15:6–8.

Around the same time, Defendant moved residences.  Tr. at 17:18–20.  When he did so, Officer Cory testified that she conducted a "virtual walk-through" of the new residence with the Defendant.  Tr. at 17:21–23.  Officer Cory described this as far more cursory than a full search—"I have them flip the camera [on their phone] and walk through the residence and show me where all the rooms are, what the rooms look like, and what's in the rooms."  Tr. at 18:1–3.

By November 12, 2020, Officer Cory still believed that she had reasonable suspicion to conduct a search of the Defendant's residence, pursuant to the search condition the Defendant was subject to. *See* Tr. at 20. Specifically, Officer Cory believed that between the firearm recovered from the scene of the crash in August, Tr. at 20:12, Defendant's having been out-of-district in Illinois at the time of that incident, Tr. at 20:23–24, and Defendant's "going to locations that he was not authorized to be at" in the last month while on location monitoring, Tr. at 22:5–8, she had the requisite reasonable suspicion to have a search conducted of Defendant's residence. *See* Tr. at 20. Officer Cory further testified that in her experience violations of terms of supervision often form a pattern, and that violations of one term of supervision can indicate that a defendant is violating other terms of supervision as well. Tr. at 22. Specifically, possession of a firearm indicated to her that an offender under supervision is "likely going to be committing other crimes or involved in other criminal activities." Tr. at 10:22–25.

As a result, when the Defendant reported to the U.S. Probation office on November 12, he was placed in custody by the Probation search team, and the search team proceeded to his residence to conduct a search. Tr. at 12:7–11. While on the way to his residence, Defendant admitted that there was a firearm there and claimed that it was his roommate's. Tr. at 12:14–16. Officer Cory testified that Defendant and his roommate had separate bedrooms, and that she did not believe that Defendant and his roommate were romantic partners. Tr. at 12:19–13:5. During the search, officers found a Sig Sauer .357 caliber semiautomatic handgun and two 9mm handgun magazines in the nightstand next to Defendant's bed, in which Defendant's ID card was also found. Tr. at 13:12–22.

## III. DISCUSSION

In his Post-Hearing Brief, Defendant advances two principal arguments for why suppression of the evidence discovered in the course of the search is warranted. First, Defendant asserts that the search was conducted pursuant to a warrant, and that the failure to execute such a warrant for 79 days constitutes a reckless disregard for the strictures of Federal Rule of Criminal Procedure 41. Second, Defendant contends that any evidence that justified the search had become stale by the time of the search, owing to the time that had elapsed. Neither of these arguments are availing, and as a result Defendant's Motion to Suppress should be denied.

A. *Rule 41 is inapplicable.*

Defendant first contends that "Officer Cory testified at the suppression hearing that the search was conducted by a warrant." As a result, Defendant asserts that the 14-day execution window for warrants stated in Federal Rule of Criminal Procedure 41(e)(2)(A)(i) applied in this case, and the failure to conduct the search for 79 days constituted an impermissible "reckless disregard of proper procedure." Def's Post-Hr'g Br. at 3, Docket No. 44 (quoting *United States v. Spencer*, 439 F.3d 905, 913 (8th Cir. 2006)).

While Officer Cory did testify at the hearing that the search was judicially authorized, Tr. at 11:1–3, when later asked by the Court whether there was a search warrant in this case, Officer Cory explicitly answered "No," before stating that the judicial authorization sought was a part of the Probation Office's procedures for pre-clearing searches, but could provide no further details about that process. Tr. at 23:6–11. Defendant is therefore incorrect as to Officer Cory's testimony. The search at issue in this case was not a warrant search, and Rule 41's 14-day clock is therefore simply inapplicable. *See United States v. Cote*, 569 F.3d 391, 393 (8th Cir. 2009) (holding that

Rule 41 is only applicable where either a warrant is sought by a federal officer or where a warrant search is otherwise federal in character).

B. *The search of McNair's residence was properly based on reasonable suspicion.*

"[T]he reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *United States v. Makeeff*, 820 F.3d 995, 1000 (8th Cir. 2016) (quoting *United States v. Knights*, 534 U.S. 112, 117 (2001)). In this context, "[t]he Supreme Court has recognized that 'probationers do not enjoy the absolute liberty to which every citizen is entitled,'" and "[w]hen a court imposes a search condition on a probationer it 'significantly diminishe[s] [the probationer's] reasonable expectation of privacy." *Makeeff*, 820 F.3d at 1000 (quoting *Knights*, 534 U.S. at 119–20). Moreover, *even relative to probationers*, a defendant on supervised release has only "the most circumscribed expectation of privacy." *Makeeff*, 820 F.3d at 1001.

Additionally, "it must be remembered that 'the very assumption of the institution of probation' is that the probationer 'is more likely than the ordinary citizen to violate the law.'" *Knights*, 534 U.S. at 120 (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 880 (1987)). "An officer having reasonable suspicion that a probationer, who is subject to a search condition, is criminally active is sufficient to establish 'enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable.'" *Makeeff*, 820 F.3d at 1001 (quoting *Knights*, 534 U.S. at 121).

At the time she first decided that a search was justified, Officer Cory suspected that the Defendant had possessed a firearm at the crash scene in Illinois, and she had in fact been told by the state trooper that Defendant was the only person at the scene of the crash. Tr. at 8:6–7. She

was aware of "the state trooper's suspicion that [Defendant] was in possession of" the gun found, and she believed that Defendant's presence in Illinois and the incident taken as a whole indicated that Defendant had otherwise violated the terms of his supervision. *See* Tr. at 10:15–18. Furthermore, based on Officer Cory's training and experience, she believed that offenders on supervision who have "had a firearm . . . are likely going to be committing other crimes or involved in other criminal activities." Tr. at 10:22–25.

Defendant contends, though, that, even if there was ample reasonable suspicion to justify a search in August, when Officer Cory first sought permission to search Defendant's residence, by the time the search was conducted in November any evidence underlying that reasonable suspicion was stale, and the search was therefore improper. *See* Def's Post-Hr'g Br. at 3–6. However, the Defendant's approach of "[s]imply counting the numbers of days between the occurrence of the facts supplied" and the search holds little weight, *see United States v. Stachowiak*, 521 F.3d 852, 856 (8th Cir. 2008), and the Eighth Circuit has instead always affirmed that "[t]here is no bright-line test for determining when information is stale," *id.*

Indeed, the Eighth Circuit has consistently held that evidence about potential possession of firearms in particular remains fresh for extended periods of time. In *United States v. Neal*, for example, in the more stringent context of assessing the validity of probable cause supporting a search warrant, the Eighth Circuit indicated that "[i]nformation that someone is suspected of possessing firearms illegally is not stale, even several months later, because individuals who possess firearms tend to keep them for long periods of time." *See United States v. Neal*, 528 F.3d 1069, 1074 (8th Cir. 2008). In *United States v. Maxim*, the Eighth Circuit upheld a warrant to search for firearms that was solely based on information ranging from four months old to three years old. 55 F.3d 394, 397 (8th Cir. 1995).

Furthermore, Officer Cory specifically testified that Defendant's violations of the terms of his supervised release did not end in August, and in fact they continued after the imposition of electronic monitoring in the month leading up to the search itself. Tr. at 15:6–8. Officer Cory indicated that, at the time of the search, she viewed these newer violations as evidence that the Defendant was continuing to violate the terms of his supervision, further justifying the search. *See* Tr. at 21:23–22:8. Notably, in the warrant context, the Eighth Circuit has held that "the passage of time is less significant" in cases involving such a continuing course of behavior. *See United States v. Jeanetta*, 533 F.3d 651, 655 (8th Cir. 2008) (quoting *United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998)).

Put simply, in light of the Defendant's "most circumscribed expectation of privacy" as an offender on supervised release, *Makeeff*, 820 F.3d at 1001, his approach of "simply counting the number of days between the occurrence of the facts supplied" and the search is unavailing. *See United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001) (quoting *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993)). Viewed as a whole, the facts available to Officer Cory, coupled with her training and experience as a Probation Officer supervising hundreds of offenders on federal supervised release, more than amply predicated the reasonable suspicion search as conducted.

## IV.    CONCLUSION

For the foregoing reasons, the United States of America respectfully requests that the Court deny Defendant's Motion to Suppress Physical Evidence.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney

*/s/ William Scharf*
WILLIAM SCHARF, #66676MO
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/ William Scharf*
WILLIAM SCHARF, #66676MO
Assistant United States Attorney